**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **INFRA TECHNOLOGY, LLC** | § | **CASE NO. 19-31444** |
| | § | **CHAPTER 7** |
| | § | |
| **DEBTOR** | § | **JUDGE EDUARDO V. RODRIGUEZ** |

**TRUSTEE'S STATUS REPORT, RECOMMENDATION FOR APPROVAL OF SALE OF
ASSETS and MOTION FOR APPROVAL AND PAYMENT OF ADMINISTRATIVE EXPENSES**

---

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN TWENTY-ONE (21) DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

---

**DUE TO POSTAGE COSTS, COPIES OF THE EXHIBITS REFERRED TO HEREIN HAVE NOT BEEN INCLUDED WITH THE PHYSICAL COPY OF THIS MOTION SERVED ON PARTIES-IN-INTEREST.   IF YOU DESIRE A COPY OF THE EXHIBITS REFERRED TO HEREIN, EMAIL MMYERS@ROSSBANKS.COM AND COPIES WILL BE PROVIDED TO YOU VIA EMAIL**

***THE TRUSTEE REQUESTS THAT APPROVAL OF THE ADMINISTRATIVE EXPENSE CLAIMS BE HEARD ON AN EXPEDITED BASIS AT THE HEARING TO CONSIDER APPROVAL OF THE SALE OF ESTATE ASSETS CURRENTLY SET FOR JUNE 11, 2019 AT 2:00 P.M.***

**To the Honorable Eduardo V. Rodriguez,
United States Bankruptcy Judge**:

COMES NOW Eva S. Engelhart, Chapter 7 Trustee and would show as follows:

**A. Procedural History**

1.      On March 14, 2019 (the "***Petition Date***"), INFRA Technology, LLC (the "***Debtor***") filed

for voluntary Chapter 7 relief in the above-captioned bankruptcy case.   On the same date, the Trustee was

appointed interim Trustee and has since become permanent Trustee.

2.      On March 29, 2019, the Trustee sought court approval to conduct an auction sale of the Estate's tangible assets at Docket Number 16.

3.      On April 1, 2019, the Court entered an Order authorizing the auction process at Docket Number 18.

4.      A hearing for approval of the sale of the assets offered at auction is set for June 11, 2019 at 2:00 p.m., before this Honorable Court.

### B. Assets of the Bankruptcy Estate Offered for Sale at Auction

5.      The tangible assets of this Estate include the following:

a.      *Real Property*:   On the Petition Date, the Debtor owned approximately 5.26 acres of land located at 7391 US-59, Wharton, Texas 77488 (the "Property").   The Debtor purchased the Property on February 5, 2016, from Wharton Industrial Foundation, Inc., for the contract price of $229,145.00.

b.      *GTL Plant*:   The Property was utilized by the Debtor as the construction site for a small gas-to-liquid chemical plant (the "GTL Plant") designed to convert natural gas to a usable petroleum product utilizing a third party owned proprietary process.   The GTL Plant was designed as proof of concept facility and was never intended for, nor is it capable of, the production of any product in commercially sustainable quantities.   The goal of the GTL Plant was to achieve production of sufficient volumes of product to specification for a period of time.   Once this goal was achieved, a larger production facility(ies) would be built to actually produce product in commercially viable amounts.   According to information provided by the Debtor, it is the Trustee's understanding that the GTL Plant had never achieved production of *any* product and that in order to achieve a production capacity of 15-barrels a day of product, an additional investment of approximately $3 million in equipment and an additional $4 to $5 million in working capital was required.   The Debtor's principals have further opined that to get to the target production goal of 100 barrels a day, a total of $12 million in further investment is required.

### C. Claims Against Property of the Estate

*Wharton County Taxing Authority Claims*

6.      The Wharton County Taxing Authorities filed proof of claim number ten (10) ("POC 10")[1]

in this case asserting a claim for unpaid/estimated *ad valorem* property taxes for the years 2018 and 2019[2]

for the Property and GTL Plant as follows:

| Description | 2018 Taxes Due | 2019 Estimated Taxes | Total |
|---|---|---|---|
| Property | $3,366.92 | $3,243.39 | $6,610.31 |
| GTL Plant | $186,888.25 | $232,654.12 | $419,542.37 |
| Totals | $190,255.17 | $235,897.51 | $426,152.68 |

As stated more thoroughly in the Trustee's Motion for Determination of *Ad Valorem* Personal Property Tax

Liability Pursuant to Section 505 of the Bankruptcy Code [Docket Number 49], the Trustee vigorously

disputes the Wharton County Appraisal District's ("WCAD") 2019 appraised value of the GTL Plant of

$11,886.300.    The Trustee believes this valuation to be grossly overstated.    Notwithstanding the

foregoing, assuming closing of the sale of the Property and GTL Plant, the Estate will be liable the amount

due for unpaid 2018 property taxes and a *pro rata* share of whatever tax liability is due for 2019, after a

determination of value of the GTL Plant for purposes of 2019 *ad valorem* property taxes.

*American Welding Services Corporation*

---

[1]  The total amount asserted in POC 10 is $428,414.59 and is attributable to taxes for the Property, the GTL Plant and apparently a 2.7 acre tract of land immediately north of the Property under Account Number R074370.   The total amount asserted for Account Number R074370 is $2,261.91 ($1,152.08 for 2018 and $1,109.83 for 2019).   Based upon the Trustee's research, it appears that the Debtor's interest in this particular property is limited to an easement for storm water drainage.   Accordingly, as the Estate does not own this property, it cannot be administered.   The Trustee denies that the Estate is liable for any portion of the taxes due on this acreage and will object to proof of claim number 10 as appropriate.   The amounts alleged for Account Number R074370 are not included in the foregoing analysis.

[2]  The 2019 estimated taxes are for the entire calendar year of 2019.   The Estate's share for 2019 taxes will be prorated at closing of the sale of the Property/GTL Plant.

7.      Prior to the bankruptcy filing, a dispute had arisen between the Debtor and American Welding Services Corporation ("AWS"), a contractor engaged by the Debtor to assist in the construction of at least a portion of the GTL Plant.   The dispute centered on what amount was still due to AWS, with the amount in controversy ranging from $52,000 from the Debtor's perspective to more than $1.8 million by AWS.   On February 16, 2017, AWS filed a Mechanic's and Materialman's Lien in the Wharton County Real Property Records asserting a debt of approximately $1.8 million (the "M&M Lien Affidavit"). Shortly thereafter, on March 6, 2017, the Debtor filed Cause No. CV496643, *INFRA Technology, LLC vs. American Welding Services Corporation* in the 23rd Judicial District Court in Wharton County, Texas (the "Litigation").   Although more complexly pled in this litigation, the Debtor sought, among other things, declaratory relief that the M&M Lien Affidavit was untimely filed and disputed the validity of the debt alleged as well as a host of additional affirmative claims and defenses.   Conversely, although more complexly pled, AWS contended, among other things, that the M&M Lien Affidavit was timely filed; entitlement to a Constitutional Lien against the Property and GTL Plant; entitlement to an M&M lien under the Texas Property Code; and a *quantum meruit* claim.   AWS's various claims had the potential to wipe out any equity interest of the Estate in the Property and GTL Plant, but for the fact that the Trustee and AWS reached a settlement of all claims at issue.

8.      On May 10, 2019, the Trustee filed her Motion to Compromise Controversy with American Welding Services Corporation Pursuant to FRBP 9019 [Docket Number 41].   By way of summary only, the settlement provides that the Estate will pay AWS up to $125,000 from the proceeds of sale of the Property and GTL Plant, net of certain administrative expenses of the Estate.   To the extent that net funds are not available to pay the full amount due to AWS, the amount payable to AWS is reduced to the amount of available eligible funds.

**D. Auction Results**

9.      Shortly after being appointed Trustee, the Trustee sought out the assistance of Tranzon Asset Advisors (the "Auctioneer") to assist her in the marketing and sale of the Property and GTL Plant.

Thereafter, she received letters of intent from Savannah GTL, LLC ("Savannah") and AEP Renewable Fuels, LLC ("AEP"), for purchase of the Property and GTL Plant for $750,000 and $700,000 respectively. Moreover, the Wharton Economic Development Corporation also expressed interest in purchasing the Property.   On March 29, 2019, given the interest in Estate assets by multiple parties, the Trustee filed her Motion for Entry of an Order: (a) Approving Auctioneer Retention; (b) Approving Conduct of Auction Sale of Real and Personal Property; and (c) Scheduling Sale Approval Hearing [Docket Number 16][3].

10.     On April 1, 2019, the Court entered an Order approving the Trustee's proposed online auction process commencing on May 13, 2019 to May 15, 2019 [Docket Number 18].   The auction process was highly advertised by Tranzon.   After conclusion of the auction, the following bids had been made for the Property:

| BIDDER | TOTAL |
| --- | --- |
| Charles Odom | $157,500.00 |
| Mohammed Koya | $155,000.00 |
| Mohammed Koya | $152,500.00 |
| Charles Odom | $150,000.00 |
| Charles Odom | $115,000.00 |
| Mohammed Koya | $110,000.00 |
| Charles Odom | $97,000.00 |
| Mohammed Koya | $92,000.00 |
| Charles Odom | $86,000.00 |
| Mohammed Koya | $81,000.00 |
| Charles Odom | $75,000.00 |

11.     The following bids had been made for the GTL Plant at auction:

| BIDDER | TOTAL |
| --- | --- |
| Dmitri Popov | $225,000.00 |
| Mohammed Koya | $200,000.00 |
| Dmitri Popov | $175,000.00 |
| Mohammed Koya | $150,000.00 |

---

[3] Expedited relief was sought on the basis that the Estate lacked funds with which to insure the Property or GTL Plant.

12.     None of the parties who submitted letters of intent to the Trustee participated in the auction, much to the Trustee's surprise and disappointment.   Based upon the bids made at the auction, the gross amount received would have been realized by the Estate was $382,500.00.   After consideration of anticipated administrative expenses (estimated to be at least $100,000[4]); payment of $125,000 to AWS; and payment of the 2018 *ad valorem* property taxes of $190,255.17, unsecured creditors would not receive any dividend as a result of closure of each of the high bids for the Property and GTL Plant at auction. Moreover, the foregoing does not take into account the Estate's *pro rata* share of 2019 ad valorem property taxes, whatever amount that may be.   Because of these disappointing results, the Trustee is not willing to recommend approval of any of the bids at auction to the Court.

13.     In an attempt to realize actual value for unsecured creditors, the Trustee sent correspondence to the parties whom had previously submitted letters of intent, and to those parties who actually bid at auction, advising them of the opportunity to make a single, best and final bid for the Property and GTL Plant (the "Solicitation Letter"), with a deadline of May 31, 2019[5].   See **Exhibit A**.   The Trustee received the following bids by the May 31st deadline:

| Bidder | Property Bid | GTL Plant Bid | Total Bid |
|---|---|---|---|
| Mabert, LLC | $230,000 | $485,000 | $715,000 |
| Power Inn Rd. Associates, LLC | $225,000 | $450,000 | $675,000 |
| Wharton Economic Development Corporation | $257,500 | - | $257,500 |

**E. Trustee's Recommendation**

---

[4] This includes estimated compensation for the Trustee under § 326; estimated to date fees for her general counsel; estimated fees for her accountant; estimated reimbursement of property preservation costs advanced by the Debtor's owner; and estimated reimbursement of auctioneer expenses.

[5] Although not specifically addressed in the Solicitation Letter, the minimum bids are inclusive of the Auctioneer's 10% Buyer's Premium.

14.     The Trustee recommends acceptance and approval of the offer by Mabert, LLC, on the terms and conditions stated in the Sales Purchase Contract attached as **Exhibit B**.   Although the Wharton Economic Development Corporation ("WEDC") bid more for the Property, Mabert, LLC is not willing to purchase just the GTL Plant and then enter into a lease arrangement with WEDC.   Further, with no buyer of the GTL Plant, it would either have to be abandoned or sold for scrap at a value less than what is owed for 2018 taxes, not to mention any 2019 tax liability.   Accordingly, the Trustee posits that the proposed sale is the highest and best offer for purchase of the Property and the GTL Plant.   The Trustee requests Court approval of the proposed sale to Mabert, LLC.

### F. Request for Approval and Payment of Administrative Expenses

15.     On the Petition Date, and thereafter, the Estate lacked funds with which to fund security, utilities and insurance for the Property and the GTL Plant.   INFRA Synthetic Fuels, Inc. ("Synthetic"), an affiliate of the Debtor, agreed to advanced funds on behalf of the Estate to cover costs associated with security at the GTL Plant and the cost of electricity thereat.   Attached as **Exhibit C** is an invoice for $27,851.31 representing Synthetic's (a) out of pocket costs for security for the premises from March 21, 2019 to April 21, 2019 in the amount of $15,360 ($495.50 per day); (b) out of pocket costs for security from April 22, 2019 to June 15, 2019 in the amount of $8,250 at the reduced rate to the Estate of $150 per day; and (c) $4,241.31 for electricity charges.   The amounts paid by Synthetic on the Estate's behalf were for the preservation of Estate property after the Petition Date and was of great benefit to the Estate.   But for these expenditures, third parties may have vandalized Estate property, impairing the value thereof.   The Trustee requests that Synthetic be awarded and administrative claim in the amount of $27,851.31 under 11 U.S.C. § 503 and that she be allowed to pay such amount from the proceeds of sale of the Property/GTL Plant at closing.

16.     Additionally, the Auction Order authorized payment of up to $22,500 in expenses incurred by the Auctioneer for marketing, security and hazard insurance on the Property.   Attached hereto as **Exhibit D** is an invoice from the Auctioneer for such expenses (excluding security costs which were

covered by Synthetic).   Due to unanticipated delays and circumstances, the Auctioneer agreed to advance more sums for the costs of insuring estate property than originally anticipated.   The provision of insurance was of great benefit to the Estate and protected it from potential losses during the time that its assets were marketed.   The Trustee request that the Auctioneer be awarded a claim for $21,354.72, for sums previously authorized by the Auction Order and additional sums advanced on behalf of the Estate, under 11 U.S.C. § 503 and that she be allowed to pay such amount from the proceeds of sale of the Property/GTL Plant at closing.

WHEREFORE based on the foregoing, the Trustee requests all relief sought herein and for such other and further relief to which he may show herself entitled.

Respectfully submitted,

/s/ Marc Douglas Myers

_____
Marc Douglas Myers
Ross, Banks, May, Cron & Cavin, P.C.
SBN 00797133
7700 San Felipe, Suite 550
Houston, Texas 77063
(713) 626-1200; (713) 623-6014 fax
mmyers@rossbanks.com
COUNSEL FOR THE TRUSTEE

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2019, a true and correct copy of the foregoing was sent via regular US mail to the Debtor(s), counsel for the Debtor(s), the Trustee, counsel for the Trustee, the US Trustee, all creditors and all persons requesting notice as set forth below unless otherwise served by the CM-ECF system.

/s/ Marc Douglas Myers

_____
Marc Douglas Myers

| | | | |
|---|---|---|---|
| INFRA Technology LLC<br>1980 Post Oak Blvd., Suite 1500<br>Houston, TX 77056-3845 | PO Box 3547<br>Houston, TX 77253-3547 | 616 Hepburn St.<br>Williamsport, PA 17701-5007 | 11951 N Spectrum Blvd<br>Houston, TX 77047-7803 |
| ADP<br>undeliverable | Apache Industrial Services<br>250 Assay St. Suite 500<br>Houston, TX 77044-3507 | Cintas<br>6707 W. Sam Houston Prwy N<br>Houston, TX 77041-4099 | Cross Roads Oil Field Supply<br>PO Box 1546<br>El Campo, TX 77437-1546 |
| Allstar Sanitation Services<br>PO Box 1090<br>El Campo, TX 77437-1090 | Aspen Technology<br>PO Box 347374<br>Pittsburgh, PA 15251-4374 | City of Wharton<br>120 E. Caney St.<br>Wharton, TX 77488-5006 | Crystal Clean<br>13621 Collections Center Drive<br>Chicago, IL 60693-0136 |
| American Welding Services<br>8244 Harborside Dr.<br>Galveston, TX 77554-7199 | Blue Cross Blue Shield of Texas<br>P.O. Box 731428<br>Dallas, TX 75373-1428 | CleanCo Systems<br>P.O. Box 1569<br>Channelview, TX 77530-1569 | Culligan<br>5450 Guhn Road<br>Houston, TX 77040-6211 |
| Ann Harris Bennett | Carey Boiler Works | Cook Compression | Dmitrii Popov |

5280 Caroline St., Apt. 907
Houston, TX 77004-5883

Enterprise Products
P.O. Box 4324
Houston, TX 77210-4324

GBSM Service and Management
14303 Hartshill Dr
Houston, TX 77044-5067

Grace Utley, TAC
P.O. Box 189
Wharton, TX 77488-0189
H&E Equipment Services, Inc.
502 FM 359 Road South
Brookshire, TX 77423-9005

Haldor Topsoe
17629 El Camino Real, Suite 300
Houston, TX 77058-3076

Hoerbiger Service Inc.
1191 East Newport Center Drive, Ste 210
Deerfield Beach, FL 33442-7708

Humana Insurance Co.
P.O. Box 3024
Milwaukee, WI 53201-3024

Huseyin Turanli
5454 Newcastle St, Apt. 1220
Houston, TX 77081-2263

INFRA XTL Technology LTD
Riga Feraiou, 2, Limassol Center
Block B, 6th Floor, Office 601
P.C. 3095, Limassol, Cyprus

IRS
Centralized Insolvency Operati
PO Box 7346
Philadelphia, PA 19101-7346

Innovation Safety Solutions
P.O. Box 110
La Marque, TX 77568-0110

Instrumart
35 Green Mountain Drive
South Burlington, VT 05403-7824

Jack Haynie
3826 Antibes Lane
Houston, TX 77082-3138

Jas Brar
2 Houston Center
909 Fannin, Suite 1640
Houston, TX 77010-1018

Lightning Bolt & Supply Inc.
211 West Harris Avenue
Pasadena, TX 77506-3411

Lightning Bolt & Supply Inc.
10626 S. Choctaw Drive
Baton Rouge, LA 70815

Logix
P.O. Box 734120
Dallas, TX 75373-4120

Martin Electric Co. Inc
1504 W Jackson Street
El Campo, TX 77437-9310

MidAmerican Energy Services
P.O. Box 8019
Davenport, IA 52808-9900

Mobile Modular Portable Stroage
P.O. Box 45043
San Francisco, CA 94145-5043

Nalco Company
1601 W Diehl Road
Naperville, IL 60563-1198

NetWolves
4710 Eisenhower Blvd., Suite E-8
Tampa, FL 33634-6336
Nicholas Boyd
9720 Broadway St, Apt. 1534
Pearland, TX 77584-8747

Oak, Hartline & Daly
2323 S. Shepherd, 14th Floor
Houston, TX 77019-7024

Pablo Rendon
9314 Drewberry
Houston, TX 77080-2938

Praxair
P.O. Box 120812
Dallas, TX 75312-0812

Quincy Compressor
701 North Dobson Avenue
Bay Minette, AL 36507-3199

RW Smith
3030 Greens Road
Houston, TX 77032-2204

Regus
undeliverable

Satellite Shelters
18500 Van Rd.
Houston, TX 77049-1324

Saybolt LP
201 Deerwood Glen Drive
Deer Park, TX 77536-3270

Sun Coast Resources
6405 Cavalcade Bldg 1
Houston, TX 77026-4315

Terminix
4407 Halik Street, Suite E500
Pearland, TX 77581-1901

Texas Mutual Insurance Company
6210 E Highway 290
Austin, TX 78723-1098

Timeline Logistics
P.O. Box 131483
Houston, TX 77219-1483

Turner Stone & Company
12700 Park Central Drive, Suite 1400
Dallas, TX 75251-1507

ULine
12575 Uline Drive
Pleasant Prairie, WI 53158-3686

US Trustee
515 Rusk Ave., Ste 3516
Houston, TX 77002-2604

United Rentals
101 Old Underwood Rd., Bldg
La Porte, TX 77571-9480

Vcorp
25 Robert Pitt Dr., Suite 205
Monsey, NY 10952-3366

Wastewater Transport Services
826 Linger Ln
Austin, TX 78721-3650

Wharton County Tax Office
P.O. Box 189
Wharton, TX 77488-0189
Williams Scotsman
142 West Hardy Road
Houston, TX 77060-4615

Eva S Engelhart
7700 San Felipe, Suite 550
Houston, TX 77063-1618

Megan M Adeyemo
2200 Ross Avenue, Suite 4100 West
Dallas, TX 75201-7902

JM Partners, LLC
6800 Paragon Place, Suite 202
Richmond, VA 23230-1656

Wharton County Taxing Authorities
c/o Tara LeDay
700 Jeffrey Way
Round, Rock, Texas 78665

Wharton County Appraisal District
Attn:  Tylene Gamble, Chief Appraiser
308 E. Milam St.
Wharton, Texas 77488

# ROSS, BANKS, MAY, CRON & CAVIN, P.C.

## Attorneys at Law

www.rossbanks.com

Marc Douglas Myers
email: mmyers@rossbanks.com

May 17, 2019

RE:     Case No. 18-31444, *In re INFRA Technology, LLC*, in the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

Dear Interested Bidders:

Please be advised that this law firm represents Eva S. Engelhart, Chapter 7 Trustee of the above-referenced bankruptcy case. As you are aware, this bankruptcy estate owns approximately 5.2 acres of land located at located at 7391 US-59, Wharton, Texas 77488 (the "Land") as well as a gas-to-liquid plant (the "GTL Plant") located thereon. All information available to the Trustee on these assets is located at https://www.tranzon.com/TAA1909A and https://www.tranzon.com/TAA1909B.

The purpose of this correspondence is to give you an opportunity to submit a best and final bid for the purchase of the Land and/or the GTL Plant. If you choose to bid for both assets, you must allocate a specific US dollar amount for each asset. In regards to the foregoing:

- The Trustee has been advised that INFRA XTL Technology, Ltd. (Cyprus), the owner of the relevant intellectual property, is still willing to provide the same form of license as previously posted on the referenced Tranzon website;

- The minimum bid which will be considered for the GTL Plant is $450,000.

- The minimum bid which will be considered for the Land is $225,000.

- If you wish to purchase only the GTL Plant, be advised that the Land may be sold the Wharton County Economic Development Council. The Council has advised the Trustee that it is willing to lease the Land for up to 1-year @ $5,000 per month. Any additional terms would be subject to negotiation between the applicable parties.

- Bids may not be contingent upon the occurrence of any event other than bankruptcy court approval.

The bidding deadline is Friday, May 31, 2019 @ noon, central time. Bids must be made in writing and actually received by the deadline. Delivery may be accomplished by personal delivery, fax or email. The Trustee's physical delivery address and fax number are set out below and must be to the attention of Eva S. Engelhart, Trustee. If the bid is delivered by email, please send to eengelhart@rossbanks.com and mmyers@rossbanks.com. Bids will be kept confidential until after the bidding deadline.

Sincerely,

Marc Douglas Myers

7700 San Felipe, Suite 550 ♦ Houston, Texas 77063
Telephone (713) 626-1200 ♦ Facsimile (713) 623-6014

# SALE PURCHASE CONTRACT

1. **PARTIES:**  Seller agrees to sell and convey to Buyer the Property described in Paragraph 2. Buyer agrees to buy the Property from Seller for the sales price stated in Paragraph 3.  The parties to this contract are:

| | |
|---|---|
| Seller: | Eva S. Engelhart, Chapter 7 Trustee of the Bankruptcy Estate of INFRA Technology, Case No. 19-31444 |
| Address: | 7700 San Felipe, Suite 550 |
| City: | Houston      State:   Texas      Zip:      77063 |
| Phone: | (713) 626-1200      Fax:      (713) 623-6014 |
| Email: | eengelhart@rossbanks.com |

| | |
|---|---|
| Buyer: | Mabert, LLC and/or its assigns. |
| Address: | 878 Meadow Hill Road. |
| City: | Fort Worth      State:   Tx      Zip:      76108 |
| Phone: | 214.876.9795      Fax: |
| Email: | kevin@acfteam.com |

2. **PROPERTY:**

   A. The term "Property" means the real property and the personal property GTL Plant described in the deed attached hereto as Exhibit A, which is incorporated herein by reference more commonly known as 7391 US-59, Wharton, Texas 77488.  All of the personal property located on the Property is included within the scope of this sales agreement excluding the boiler.

   The Sales Price (as set forth in Paragraph 3 below) is not dependent upon the exact number of square feet comprising the Property.  Any statement in the legal description of the Property contained in any survey or the Deed as to the area or quantity of land is not a representation that such area or quantity is correct, but is made only for informational and/or identification purposes.

   B. Seller will sell and convey the Property and all rights and appurtenances pertaining thereto.

3. **SALES PRICE:**

   | | |
|---|---|
| A. Real Property Purchase Price | $207,000.00 |
| B. Personal Property Purchase Price | $436,500.00 |
| C. 10% Buyer's Premium | $ 71,500.00 |
| C Total **Sales Price** (sum of 3.A. and 3.B.) | $715,000.00 |

4. **EARNEST MONEY:**

   A. Concurrent with the execution of this contract, Buyer shall deposit $71,500.00 of the Sales Price as a **NON-REFUNDABLE** earnest money (the "Earnest Money Deposit") with the Title Company. The Earnest Money Deposit will be applied to the Sales Price at closing. Buyer's sole remedy for the Deposit is defined in Paragraph 14.B below.

**1**                                    Buyer: _____   Seller: _____

B. Concurrent with the execution of this contract, Buyer shall deposit the additional **NON-REFUNDABLE** amount of **$2,200.00** with the Seller by check payable to Eva S. Engelhart, Trustee (the "Additional Deposit") and delivered to 7700 San Felipe, Suite 550, Houston, Texas 77063. This Additional Deposit shall NOT be applied to the Sales Price at closing and is not subject to refund for any reason.

C. Buyer further agrees to pay for security for the Property from June 15, 2019 until the earlier of closing or July 15, 2015, which cost is not expected to exceed $200 per day. Any amounts paid for security for the Property under this paragraph shall NOT be applied to the Sales Price at closing and is not subject to refund or credit for any reason.

D. Buyer further agrees to pay the water and electric bill for services provided to the Property for the time period from June 15, 2019 until the earlier of closing or July 15, 2019. In the event the Trustee receives an invoice from the water or electric utility, the Trustee will forward such invoice to Buyer, and Buyer will pay the invoice within three business days. The maximum amount the Buyer will be obligated to pay under this paragraph is $5,000.00. Any amounts paid by Buyer for the water and electric services provided to the Property under this paragraph shall NOT be applied to the Sales Price at closing and is not subject to refund or credit for any reason.

E. If Buyer fails to deposit the earnest money as required by this contract, then this contract will immediately terminate and be of no further force and effect.

**5. TITLE POLICY AND SURVEY:**

A. <u>Title Policy</u>:

Seller, at Seller's expense, will furnish Buyer an Owner's Policy of Title Insurance (the "Title Policy") issued by First Western Title (6116 N. Central Expy, Suite 1450, Dallas, Texas 75206) (the "Title Company") in the amount of the Sales Price, dated at or after closing, insuring Buyer against loss under the Title Policy, subject only to those title exceptions present on the Commitment.

B. <u>Survey</u>:

Buyer may obtain a survey of the Property at Buyer's expense.  If Buyer elects to obtain a survey, then Buyer shall deliver a copy of the survey to Seller.

Buyer's acceptance of the Deed and Title Policy issued by the Title Company shall be deemed to be compliance by Seller with any requirements with respect to matters of record and conclusive of said purchaser's acceptance of the title represented thereby and as being in accordance with the obligations of Seller as set forth herein.

C. <u>Buyer's Objections to the Commitment and Survey</u>:

Buyer hereby waives any and all rights it may have (whether at law, equity, or otherwise) to object to the Commitment and the survey, and waives any and all rights it may have (whether at law, equity, or otherwise) to terminate this Contract regarding the Commitment or the survey.  All those matters disclosed within or on the Commitment and the survey are the "Permitted Encumbrances."

Buyer: _____  Seller: _____

**6. PROPERTY CONDITION:**

A. SELLER MAKES NO REPRESENTATION, WARRANTY, STATEMENT, OR OTHER ASSERTION, EXPRESS OR IMPLIED, WITH RESPECT TO THE PHYSICAL OR ENVIRONMENTAL CONDITION OF THE PROPERTY TO BE CONVEYED, THEIR HABITABILITY, TENANT ABILITY OR SUITABILITY FOR COMMERCIAL PURPOSES, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, OTHER THAN AS CONTAINED HEREIN AND BUYER WILL ACKNOWLEDGE THE SAME AT THE CLOSING OF THE PURCHASE OF THE PROPERTY.

B. Buyer will take the Property **AS IS, WHERE IS**, with any and all latent and patent defects. Buyer shall be fully responsible for making its own evaluation and determination as to the condition of the Property.  The Deed to be delivered by Seller shall contain a provision incorporating the limitations as to warranties and representations.  PRIOR TO EXECUTING THIS CONTRACT, BUYER WAS AFFORDED ADEQUATE TIME AND ACCESS TO INSPECT THE PROPERTY.  BUYER'S ACCEPTANCE OF THE PROPERTY IN IT'S **AS IS, WHERE IS** CONDITION IS PARTIAL CONSIDERATION AND A SIGNIFICANT FACTOR IN THE NEGOTIATED SALES PRICE.  BOTH BUYER AND SELLER, AFTER NEGOTIATION, MUTUALLY AGREED TO THE PROPERTY BEING CONVEYED IN ITS **AS IS, WHERE IS** CONDITION.  SIMILAR LANGUAGE WILL BE INCLUDED IN THE DEED DELIVERED AT CLOSING AND ALL TERMS OF THIS PARAGRAPH WILL SURVIVE CLOSING.

C. Buyer will acknowledge and stipulate at the closing of the purchase of the Property that having been given the opportunity to inspect the Property, said Purchaser will be relying solely on said Purchaser's own investigation and not on any information provided by Seller (except for Seller's warranty of title).

**7. BROKER(S) AND AUCTIONEER:** All obligations of the parties for payment of Auctioneer and Broker's fees are contained in a separate written agreement; however, the Title Company is authorized to disburse all funds payable to Auctioneer pursuant to that agreement from proceeds at closing.

**8. CLOSING:**

A. The closing of the sale will be on or before 5:00 PM on July 15, 2019, assuming the Bankruptcy Court has entered an order approving the sale or before June 30, 2019 and the order becomes final and non-appealable prior to July 15, 2019. If the sale contemplated by this agreement is not approved by the Bankruptcy Court by June 30, 2019, for reasons other than a default by Buyer or Seller, then this agreement is terminated and Seller shall return the Earnest Money Deposit to Buyer within thirty (30) days.  If the sale contemplated by this agreement is approved by the Bankruptcy Court on or before June 30, 2019 and the order becomes final and non-appealable prior to July 15, 2019, but a party hereto fails to close by the Closing Date, the non-defaulting party may exercise the remedies in Paragraph 14.

B. Seller agrees to provide notice of any order by the Bankruptcy Court approving or rejecting the sale contemplated by this agreement within two (2) business days of receipt of same by sending a copy by email to kevin@acfteam.com and jeff.hellberg@wickphillips.com.

C. At closing, Seller will execute and deliver, at Seller's expense, a special warranty deed.  If any part of the Sales Price is financed, then the deed will include a vendor's lien only if the lender requests the vendor lien prior to the Closing Date.  Seller will convey the Property at closing subject to the Permitted Encumbrances and any discrepancies, conflicts or shortages in area or boundary lines, or any encroachments or protrusions or any overlapping of improvements, and all other matters that a current survey or visual inspection of the Property would reveal; all easements, restrictions, conditions,

Buyer: _____   Seller: _____

outstanding oil, gas, and mineral interests, including royalty interest; all other encumbrances to the extent the same are valid, enforceable and affect the Property; and all laws, rules, and regulations (including zoning ordinances) of applicable governmental authorities having or asserting jurisdiction over the Property.

D. At closing, Seller, at Seller's expense, will also deliver:

    (1) an executed Bill of Sale in the form attached hereto as Exhibit B;

    (2) tax statements for the Property; and

    (3) any notices, statements, certificates, affidavits, releases, and other documents required by this Contract or law necessary for the closing of the sale and issuance of the title policy.

E. At closing, Buyer will:

    (1) pay the Sales Price in good funds acceptable to the Title Company, unless Buyer has already paid the Sales Price to Seller as required under Paragraph 5 above;

    (2) deliver evidence that the person executing this Contract is legally capable and authorized to bind Buyer; and

    (3) execute and deliver any notices, statements, certificates, or other documents required by this Contract or law necessary to close the sale.

**9. POSSESSION:** Seller will deliver possession of the Property to Buyer on funding of this sale in its present condition, subject to the terms set out herein. Until closing, Seller will operate the Property in the same manner as on the effective date. Any possession by Buyer before closing or by Seller after closing that is not authorized by a separate written lease agreement is a landlord-tenant at sufferance relationship between the parties.

**10. SPECIAL PROVISIONS:** (*Identify exhibit if special provisions are contained in an attachment.*)

See Addendum A, which is attached hereto and made a part hereof for all purposes.

The sale contemplated by this agreement is subject to Bankruptcy Court approval.

The Property is being sold free and clear of liens and claims, with any such liens and claims attaching to the proceeds of sale in the same order, priority and validity which existed on the date of filing of Case No. 19-31444, *In re INFRA Technology, LLC*, in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Case").

Buyer and Seller agree that Seller is protesting the 2019 appraised value of the GTL Plant by the Wharton County Appraisal District for Account Number R075900, and that the outcome of such protest will affect the Estate's share of 2019 ad valorem property taxes due at closing. The parties hereby agree that at closing the Estate share of such taxes shall be based upon the amount alleged as due by the County of Wharton for this Account Number in proof of claim number 10, as amended, filed in Case No. 19-31444, In re INFRA Technology, LLC, in the US Bankruptcy Court. The parties further agree that a portion of the proceeds of sale of the GTL Plant sufficient to pay this estimated liability shall be held in escrow by the Title Company pending resolution of the tax protest. Upon determination of that tax liability, Seller's *pro rata* share thereof shall be paid from the escrowed funds and the balance, if any, released to Seller.

**11. SALES EXPENSES:**

Buyer: _____ Seller: _____

A.   Seller's Expenses:  Seller will pay for the following at or before closing:

(1) releases of existing liens, except those shown on the Title Commitment or assumed by Buyer, including prepayment penalties and recording fees, unless Seller is authorized by Order entered in the Bankruptcy Case to sell the Property free and clear of liens and claims;

(2) release of Seller's loan liability, if applicable;

(3) tax statements or certificates;

(4) preparation of the deed;

(5) costs to record any documents to cure title objections that Seller has elected to cure; and

(6) other expenses that Seller will pay under other provisions of this contract.

B.   Buyer's Expenses:  Buyer will pay for the following at or before closing:

(1) all loan expenses (for example, application fees, origination fees, discount fees, buy-down fees, commitment fees, appraisal fees, assumption fees, recording fees, tax service fees, mortgage title policy expenses, credit report fees, document preparation fees, interest expense that Buyer's lender requires Buyer to pay at closing, loan related inspection fees, amortization schedule fees, courier fees, underwriting fees, wire transfer fees, and other fees required by Buyer's lender);

(2) preparation of any deed of trust;

(3) recording fees for the deed and any deed of trust;

(4) premiums for flood insurance as may be required by Buyer's lender;

(5) any escrow fee;

(6) copy and delivery fees for delivery of the title commitment and related documents; and

(7) other expenses that Buyer will pay under other provisions of this contract.

## 12. PRORATIONS, ROLLBACK TAXES, RENT, AND DEPOSITS:

A.   Prorations:

(1) Interest on any assumed loan, taxes, rents, and any expense reimbursements from tenants will be prorated through the closing date.

(2) If the amount of *ad valorem* taxes for the year in which the sale closes is not available on the closing date, taxes will be prorated on the basis of taxes assessed in the previous year. There will be no adjustments to this amount if the taxes for the year in which the sale closes vary from the amount prorated at closing.  Buyer will responsible for any shortfalls in prorated taxes.  This Paragraph 12.A.2. survives closing.

B.   Rollback Taxes:  If Seller changes the use of the Property before closing which results in the assessment of additional taxes, penalties, or interest (assessments) for periods before closing, the assessments will be the obligation of the Seller.  If this sale or Buyer's use of the Property after closing results in additional assessments for periods before closing, the assessments will be the obligation of Buyer.  This Paragraph 13.B. survives closing.

Buyer: _____  Seller: _____

**13. CONDEMNATION:**  If before closing, condemnation proceedings are commenced against any part of the Property, Buyer may:

   A.   terminate this contract by providing written notice to Seller within 15 days after Buyer is advised of the condemnation proceedings and the earnest money will be refunded to Buyer; or

   B.   appear and defend in the condemnation proceedings and any award will, at Buyer's election, belong to:

   (1) Seller and the sales price will be reduced by the same amount; or
   (2) Buyer and the sales price will not be reduced.

**14. DEFAULT:**

   A.   If Buyer fails to comply with this Contract, Buyer is in default and Seller may, as its sole and exclusive remedy, terminate this contract and retain the earnest money.

   B.   If Seller fails to comply with this Contract, Seller is in default and Buyer may, as its sole and exclusive remedy, terminate this Contract and receive back the earnest money.

**15. ATTORNEY'S FEES:**  No party shall be entitled to attorney's fees in any legal proceeding brought under or in relation to this Contract or this transaction.

**16. NOTICES:**  All notices between the parties under this Contract must be in writing and are effective when hand-delivered or mailed by certified mail return receipt requested to the recipient parties' addresses stated in Paragraph 1.

**17. DISPUTE RESOLUTION:**  The parties agree to negotiate in good faith in an effort to resolve any dispute related to this Contract that may arise.  If the dispute cannot be resolved by negotiation, the parties may, with Bankruptcy Court approval, submit the dispute to mediation.

**18. AGREEMENT OF THE PARTIES:**

   A.   This Contract is binding on the parties, their heirs, executors, representatives, successors, and permitted assigns.

   B.   This Contract is not subject to Buyer obtaining financing, survey, inspections, due diligence or any other matter.  Furthermore, if Buyer is in default, Buyer authorizes the Title Company to release the Deposit immediately upon Seller's written demand, without approval or consent from Buyer and vice versa.  The defaulting party hereby releases the Title Company from any and all liability in connection with the release of Deposit.

   C.   This Contract is to be construed in accordance with the laws of the United States Bankruptcy Code, Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure and, failing the applicability of the foregoing, the laws of the State of Texas. The parties hereby agree that any disputes regarding this agreement shall be subject to the exclusive jurisdiction of the US Bankruptcy Court in which the Bankruptcy Case is/was pending.  All obligations of the parties created hereunder are performable in Harris County, Texas.

   D.   This Contract contains the entire agreement of the parties and may not be changed except in writing.   In the event any covenant, condition or provision herein contained is held to be invalid by final judgment of any Court of competent jurisdiction, the

invalidity of such covenant, condition or provision shall not in any way affect any other covenant, condition or provision herein contained, which shall continue in full force and effect.

E.   If this Contract is executed in a number of identical counterparts, each counterpart is an original and all counterparts, collectively, constitute one agreement.

F.   Buyer may only assign this Contract if the bankruptcy court order approving this sale allows for such.

G.   Addenda which are part of this Contract are:   *(Check all that apply.)*

   X   (1)  Addendum "A";
   X   (2)  Legal Description Exhibit "A" identified in Paragraph 2.
   X   (3)  Bill of Sale Exhibit "B"

H.   In case any one or more of the provisions contained in this Contract shall for any reason be held to be invalid, illegal, and unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision hereof, and this Contract shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein. Words of any gender used in this Contract shall be held and construed to include any other gender, and words in the singular number shall be held to include the plural, and vice versa, unless the context requires otherwise.

19. **TIME:**  Time is of the essence in this Contract.  The parties require strict compliance with the times for performance.  If the last day to perform under a provision of this contract falls on a Saturday, Sunday, or legal holiday, the time for performance is extended until the end of the next day which is not a Saturday, Sunday, or legal holiday.  As used in this contract, the term "legal holiday" means any day other than Saturday or Sunday on which the Federal Reserve Bank of Dallas is closed.

20 **EFFECTIVE DATE:**  The effective date of this Contract for the purpose of performance of all obligations is the date this contract is executed by Seller and Buyer.

21. **ADDITIONAL NOTICES:**

A.   Buyer should have an abstract covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a Title Policy.

B.   Brokers are not qualified to perform property inspections, surveys, engineering studies, environmental assessments, or inspections to determine compliance with zoning, governmental regulations, or laws.  Buyer should seek experts to perform such services. Selection of inspectors and repairmen is the responsibility of Buyer and not the brokers.

C.   Buyer shall not rely upon any oral or written representations about the Property from Seller.

D.   This signed Contract transmitted by fax or email shall be treated in all manner and respects as an original document and shall be considered to have the same binding legal effect as an original document.

22. **CASUALTY LOSS:**  If any part of the Property is damaged or destroyed by fire or other casualty after the effective date, Buyer may:

(A)   terminate this Contract and the Earnest Money will be refunded to Buyer;

Buyer: _____   Seller: _____

(B)     accept the Property in its damaged condition and accept an assignment of any insurance proceeds Seller is entitled to receive, if any.

**[The Remainder of this Page is Left Intentionally Blank]**

**8**

**READ THIS CONTRACT CAREFULLY.  The brokers and agents make no representation or recommendation as to the legal sufficiency, legal effect, or tax consequences of this document or transaction.  CONSULT your attorney BEFORE signing.**

Buyer's Attorney:

Wick Phillips Gould Martin, LLP
c/o Jeffrey W. Hellberg, Jr.
3131 McKinney Ave, Suite 100
Dallas, Texas 75205

Buyer:

Mabert, LLC. (and/or its assigns)


_____
By: Kevin Jones
Its: Manager



Date:_____

Seller's Attorney

Ross, Banks, May, Cron & Cavin, P.C.
c/o Marc Douglas Myers
7700 San Felipe, Suite 550
Houston, Texas 77063

Seller:



_____
Eva S. Engelhart, Chapter 7 Trustee of the Bankruptcy Estate of INFRA Technology, Case No. 19-31444, Southern District of Texas, and not in any individual capacity



Date:_____

## ADDENDUM A

This Addendum to Sale Purchase Contract is annexed to the Sale Purchase Contract between Eva S. Engelhart, Chapter 7 Trustee of the Bankruptcy Estates of INFRA Technology, Case No. 19-31444 as "Seller" and Mabert, LLC (and/or its assigns) as "Buyer," and to the extent any of the provisions of this Addendum modify or contradict the provisions of the Contract, then to such extent, the provisions of this Addendum shall prevail. Seller and Buyer agree as follows:

The parties agree the Auction Sale Purchase Contract is amended by adding the following paragraphs:

1. <u>DISCLAIMER OF WARRANTIES & "AS-IS" CONDITION OF PROPERTY</u>:

**BUYER ACKNOWLEDGES AND AGREES THAT BUYER IS EXPERIENCED IN THE OWNERSHIP AND OPERATION OF PROPERTIES SIMILAR TO THE PROPERTY AND THAT BUYER PRIOR TO THE CLOSING DATE WILL HAVE INSPECTED THE PROPERTY TO ITS SATISFACTION AND IS QUALIFIED TO MAKE SUCH INSPECTION. BUYER ACKNOWLEDGES THAT IT IS FULLY RELYING ON BUYER'S (OR BUYER'S REPRESENTATIVES') INSPECTIONS OF THE PROPERTY AND NOT UPON ANY STATEMENTS (ORAL OR WRITTEN) WHICH MAY HAVE BEEN MADE OR MAY BE MADE (OR PURPORTEDLY MADE) BY SELLER OR ANY OF SELLER'S REPRESENTATIVES. BUYER ACKNOWLEDGES THAT BUYER HAS (OR BUYER'S REPRESENTATIVES HAVE), OR PRIOR TO THE CLOSING DATE WILL HAVE, THOROUGHLY INSPECTED AND EXAMINED THE PROPERTY TO THE EXTENT DEEMED NECESSARY BY BUYER IN ORDER TO ENABLE BUYER TO EVALUATE THE CONDITION OF THE PROPERTY AND ALL OTHER ASPECTS OF THE PROPERTY (INCLUDING, BUT NOT LIMITED TO, THE ENVIRONMENTAL CONDITION OF THE PROPERTY). BUYER ACKNOWLEDGES AND AGREES THAT SELLER HAS NOT MADE, DOES NOT MAKE AND SPECIFICALLY DISCLAIMS ANY REPRESENTATIONS, WARRANTIES, PROMISES, COVENANTS, AGREEMENTS OR GUARANTIES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE, OF, AS TO, CONCERNING OR WITH RESPECT TO (A) THE MANNER, CONSTRUCTION, CONDITION, AND STATE OF REPAIR OR LACK OF REPAIR OF ANY IMPROVEMENTS LOCATED ON THE PROPERTY, (B) THE NATURE AND EXTENT OF ANY RIGHT OF WAY, LEASE, POSSESSION, LIEN, ENCUMBRANCE, LICENSE, RESERVATION, CONDITION OR OTHERWISE THAT MAY AFFECT THE PROPERTY, (C) THE NATURE, QUALITY OR CONDITION OF THE PROPERTY, INCLUDING, WITHOUT LIMITATION, THE WATER, SOIL AND GEOLOGY, (D) THE INCOME TO BE DERIVED FROM THE PROPERTY, (E) THE SUITABILITY OF THE PROPERTY FOR ANY AND ALL ACTIVITIES AND USES WHICH BUYER MAY CONDUCT THEREON, (F) THE COMPLIANCE OF OR BY THE PROPERTY OR ITS OPERATION WITH ANY LAWS, RULES, ORDINANCES (INCLUDING ZONING ORDINANCES, IF ANY) OR REGULATIONS OF ANY APPLICABLE GOVERNMENTAL AUTHORITY OR BODY, (G) THE HABITABILITY, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF THE PROPERTY, OR (H) ANY OTHER MATTER WITH RESPECT TO THE PROPERTY, AND SPECIFICALLY, THAT SELLER HAS NOT MADE, DOES NOT MAKE AND SPECIFICALLY DISCLAIMS ANY REPRESENTATIONS REGARDING ANY HAZARDOUS SUBSTANCE OR TOXIC MATERIALS (INCLUDING ANY ASBESTOS, UNDERGROUND STORAGE TANKS OR ANY OTHER SUBSTANCE WHICH IS PROHIBITED BY STATE OR FEDERAL LAW), OR**

SOLID WASTE AS DEFINED BY THE COMPREHENSIVE ENVIRONMENTAL RESPONSE COMPENSATION AND LIABILITY ACT OF 1980, AS AMENDED, AND REGULATIONS PROMULGATED THEREUNDER.  BUYER FURTHER ACKNOWLEDGES AND AGREES THAT HAVING BEEN GIVEN THE OPPORTUNITY TO INSPECT THE PROPERTY, BUYER IS RELYING SOLELY ON ITS OWN INVESTIGATION OF THE PROPERTY AND NOT ON ANY INFORMATION PROVIDED OR TO BE PROVIDED BY SELLER.  BUYER FURTHER ACKNOWLEDGES AND AGREES THAT ANY INFORMATION PROVIDED OR TO BE PROVIDED WITH RESPECT TO THE PROPERTY WAS OBTAINED FROM A VARIETY OF SOURCES AND THAT SELLER HAS NOT MADE ANY INDEPENDENT INVESTIGATION OR VERIFICATION OF SUCH INFORMATION AND MAKES NO REPRESENTATIONS AS TO THE ACCURACY OR COMPLETENESS OF SUCH INFORMATION. BUYER FURTHER ACKNOWLEDGES AND AGREES THAT THE SALE OF THE PROPERTY AS PROVIDED FOR HEREIN IS MADE ON AN "AS-IS" CONDITION AND BASIS WITH ALL FAULTS, BUYER HEREBY WAIVES, RELEASES, ACQUITS AND FOREVER DISCHARGES SELLER, SELLER'S EMPLOYEES, AGENTS AND ANY OTHER PERSON ACTING ON BEHALF OF SELLER, OF AND FROM ANY CLAIMS, ACTIONS, CAUSES OF ACTION, DEMANDS, RIGHTS, DAMAGES, LIABILITIES, COSTS AND EXPENSES WHATSOEVER (INCLUDING COURT COSTS AND ATTORNEY'S FEES), DIRECT OR INDIRECT, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, WHICH BUYER NOW HAS OR WHICH MAY ARISE IN THE FUTURE, ON ACCOUNT OF OR IN ANY WAY GROWING OUT OF OR IN CONNECTION WITH THE PHYSICAL CONDITION OF THE PROPERTY OR ANY LAW, STATUTE, ORDINANCE, RULE OR REGULATION OF ANY GOVERNMENTAL OR QUASI-GOVERNMENTAL AUTHORITY APPLICABLE THERETO.  AFTER CLOSING, AS BETWEEN BUYER AND SELLER, THE RISK OF LIABILITY OR EXPENSE FOR ENVIRONMENTAL PROBLEMS, EVEN IF ARISING FROM EVENTS BEFORE CLOSING WILL BE THE SOLE RESPONSIBILITY OF BUYER, REGARDLESS OF WHETHER THE ENVIRONMENTAL PROBLEMS WERE KNOWN OR UNKNOWN AT CLOSING.  ONCE CLOSING HAS OCCURRED, BUYER RELEASES SELLER FROM LIABILITY FOR ANY LATENT DEFECTS AND FROM ANY LIABILITY UNDER THE COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION, AND LIABILITY ACT, AS AMENDED, 42 U.S.C. § 9601 ET SEQ., THE RESOURCE CONSERVATION AND RECOVERY ACT, AS AMENDED, 42 U.S.C. § 6901 ET SEQ., THE OIL POLLUTION ACT 33 U.S.C. § 2701 ET SEQ., THE TEXAS SOLID WASTE DISPOSAL ACT TEX. HEALTH & SAFETY CODE ANN § 361 ET SEQ., THE TEXAS WATER CODE OR ANY PROVISION OF ARKANSAS LAW. BUYER INDEMNIFIES, HOLDS HARMLESS, AND RELEASES SELLER FROM ANY LIABILITY FOR ENVIRONMENTAL PROBLEMS AFFECTING THE PROPERTY UNDER NEW LAWS OR CHANGES TO EXISTING LAWS ENACTED AFTER THE EFFECTIVE DATE THAT WOULD OTHERWISE IMPOSE ON SELLERS IN THIS TYPE OF TRANSACTION NEW LIABILITIES FOR ENVIRONMENTAL PROBLEMS AFFECTING THE PROPERTY.  PRIOR TO EXECUTING THE CONTRACT, BUYER WAS AFFORDED ADEQUATE TIME AND ACCESS TO INSPECT THE PROPERTY.  BUYER'S ACCEPTANCE OF THE PROPERTY IN ITS "AS-IS", "WHERE-IS" CONDITION IS PARTIAL CONSIDERATION AND A SIGNIFICANT FACTOR IN THE NEGOTIATED SALES PRICE.  BOTH BUYER AND SELLER, AFTER NEGOTIATION, MUTUALLY AGREED TO THE PROPERTY BEING CONVEYED IN ITS AS IS, WHERE IS CONDITION. The provisions of this Paragraph shall survive the closing of this transaction and shall not be deemed merged into the deed of the Property to Buyer or any other instrument executed in connection herewith.  At Seller's option, the deed to the Property may incorporate the terms and conditions of this Paragraph, but the lack of such incorporation shall not limit, waive or impair the terms and conditions hereof in any manner.  The possession of the Property shall be delivered to Buyer at funding, in its  "AS-IS," "WHERE-IS" condition, with all faults and

without warranties of any kind, express or implied, or arising by operation of law, except only the title warranties expressly set forth in the Deed.

2.   Buyer is strongly advised to thoroughly inspect the Property, to obtain engineering inspections, surveys, termite inspections, and market and rental studies (collectively, the "Inspections") with respect to the Property. Buyer acknowledges that Buyer is relying solely on such inspections, studies, reports and examinations in Buyer's determination of the condition of the Property.  Buyer further waives and releases any claims, demands, damages, causes of action or other remedies of any kind whatsoever against Seller for property damages or bodily and/or personal injuries to Buyer, its agents, independent contractors, servants and/or employees arising out of any Inspections prior to the Closing Date.  In the event the transaction described in this contract shall not close, Buyer shall restore the Property to its prior condition, if changed due to the inspections performed by Buyer or at Buyer's request, and shall provide Seller with the copies of the results of any studies and inspections made by Buyer.  The provisions of this paragraph shall survive the Closing or any termination of the contract notwithstanding any contrary provisions hereof and Buyer's restoration obligations (and Seller's right to enforce the same) shall, notwithstanding any contrary provision hereof, in no way be limited by any limitations on Seller's remedies set forth in Paragraph 14 of the contract, Seller to have all rights and remedies in the enforcement of Buyer's indemnification obligations.

3.   Notwithstanding anything to the contrary in the Auction Sale Purchase Contract or this Addendum, Buyer hereby waives any and every claim or cause of action against Seller relating to or arising out of the Property, including those related to title thereto (including all implied warranties).  The provisions of this paragraph shall survive the Closing.

4.   The provisions of this Addendum shall survive the closing of the transaction contemplated hereby or the earlier termination of this contract.

5.   **WAIVER OF CONSUMER RIGHTS.   BUYER WAIVES BUYER'S RIGHTS UNDER THE DECEPTIVE TRADE PRACTICES CONSUMER PROTECTION ACT, SECTION 17.41 ET SEQ., BUSINESS & COMMERCE CODE, A LAW THAT GIVES CONSUMERS SPECIAL RIGHTS AND PROTECTIONS, OR APPLICABLE ARKANSAS CONSUMER PROTECTION LAW.  AFTER CONSULTATION WITH AN ATTORNEY OF BUYER'S SELECTION, BUYER VOLUNTARILY CONSENTS TO THIS WAIVER WITH RESPECT TO THIS CONTRACT AND THE PROPERTY PURCHASED UNDER THIS CONTRACT.**  Buyer hereby represents and warrants that (a) Buyer's legal counsel was not directly or indirectly identified, suggested or selected by Seller or an agent of Seller and (b) Buyer does not consider Buyer to be in a significantly disparate bargaining position with respect to this contract.

**EXHIBIT "A"**

<u>LEGAL DESCRIPTION</u>

[ATTACHED]

GF# 2015 - 1140

Doc ID: 003303260004 Type: OFF
Kind: DEED
Filed: 02/09/2016 at 11:43:19 AM

Wharton, TX
Sandra K. Sanders County Clerk
File# 2016-00000578
BK **1012** PG**695-698**

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

THE STATE OF TEXAS     §
                       §     KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF WHARTON      §

## SPECIAL DEED WARRANTY

THAT, Wharton Industrial Foundation, Inc. a Texas non-profit Company, 101 W. Burleson, Wharton, Wharton County, Texas 77488 ("GRANTOR"), for and in consideration of the sum of $10 and other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged to it in hand paid by Infra Technology, LLC, a Delaware limited liability company doing business in Texas as Infra XTL Technology, LLC, ("GRANTEE"), has Granted Sold and Conveyed and by these presents does Grant, Sell and Convey unto GRANTEE, 2323 Shepherd Dr., Ste. 100, Houston, Harris County, Texas 77019, all of its interest in the following described tract or parcel of land situated in Wharton County, Texas, to wit:

TRACT 1     5.2604 acres of land situated in the A. Jackson Timber League Abstract 34, Wharton County, Texas and described by metes and bounds on the attached Exhibit A.

TRACT 2   A drainage easement for the benefit of Tract 1 to flow diffused storm water from tract 1 over and across the 2.70 acre tract of land described on Exhibit B ("Tract 2") at levels not to exceed the amount of storm water that would flow from Tract 1 assuming that no more than 75% of Tract 1 is improved with impervious cover.

SUBJECT TO:

A. That certain mineral interest, the royalties, bonuses, rentals and all other rights in connection with said mineral rights, as reserved in perpetuity in instrument dated January 3, 1994, executed by Peggy Caudill Hawes in favor of Hugh Rust Hawes, III, et al, recorded in Volume 106, Page 52 of the Official Records of Wharton County, Texas.

B. That certain mineral interest, the royalties, bonuses, rentals and all other rights in connection with said mineral rights as reserved in perpetuity in instrument dated October 23, 2000, executed by Hugh Rust Hawes, III, et al in favor of Wharton Industrial Foundation, Inc. recorded in Volume 388, Page 247 of the Official Records of Wharton County, Texas.

C. That certain royalty interest, as conveyed for a period of 3 years, and as long thereafter as oil or gas is produced in instrument date June 11, 1997, executed by Hugh Rust Hawes, III, et al in favor of M.L. Cogburn, recorded in Volume 241, Page 632 of the Wharton County Official Records.

Taxes of every nature for the current year have been prorated and are assumed by GRANTEE.

TO HAVE AND TO HOLD the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said GRANTEE hereinabove mentioned, its successors and assigns forever, and GRANTOR does hereby bind itself, its successors and assigns to warrant and forever defend  the said premises unto said GRANTEE, its successors and assigns, against every person whomsoever lawfully claiming or to claim the same, or any part thereof by, through or under Grantor but not otherwise.

EXECUTED on this __5__ day of February, 2016.

Wharton Industrial Foundation, Inc.

By: Gordon Franklin, President

THE STATE OF TEXAS         §
                           §
COUNTY OF WHARTON          §

        THIS INSTRUMENT was acknowledged before me on this the __5__ day of February, 2016 by Gordon Franklin, President of Wharton Industrial Foundation, Inc. and as the act of said corporation.

LYNELL J. USTYNIK
Notary Public, State of Texas
Comm. Expires 09-23-2016
Notary ID 291876-6

Notary Public in and for the State of Texas

"A"

**STATE OF TEXAS**
**COUNTY OF WHARTON**
**A. JACKSON TIMBER LEAGUE, A-34**

TRACT 1 (FEE LANDS)

BEING A 5.2604 ACRE (229,145 SQUARE FEET) TRACT OF LAND LOCATED IN THE A. JACKSON TIMBER
LEAGUE, ABSTRACT NO. 34, WHARTON COUNTY, TEXAS BEING OUT OF A CALLED 39.039 ACRE TRACT OF
LAND, CONVEYED TO WHARTON INDUSTRIAL FOUNDATION, INC, BY INSTRUMENT RECORDED IN VOLUME
388, PAGE 247 OF THE OFFICIAL RECORDS OF REAL PROPERTY WHARTON COUNTY, TEXAS, SAID 5.2604
ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS;

COMMENCING at a 1/2-inch iron rod found marking the Southwest corner of the said 39.039 Acre Tract and the
Southeast corner of Lot 1, City of Wharton - Peach Creek Subdivision according to the plat or map thereof recorded in
Slide No. 2061 of the Wharton County Plat Records lying in the North right-of-way line of the County Road No. 222 (a 80
foot wide public right-of-way);

THENCE, North 10°38'58" East (called N 13°18' E), along the common line between the said 39.039 Acre Tract and the
said Lot 1, City of Wharton - Peach Creek Subdivision a distance of 1226.00 feet to a 1/2-inch iron rod with cap (TETRA)
set for the POINT OF BEGINNING and the Southeast corner of the herein described tract of land;

THENCE, North 10°38'58" East, continuing along the common line between the said 39.039 Acre Tract and the said Lot 1,
City of Wharton - Peach Creek Subdivision a distance of 602.81 feet to a 1/2-inch iron rod found for the Northeast corner
of the herein described tract;

THENCE, North 75°19'12" West, crossing the said 39.039 Acre Tract a distance of 602.32 feet to a 1/2-inch iron rod with
cap (TETRA) set in the Southeast right-of-way line of U.S. Highway No. 59 (a variable width public right-of-way) for the
Northwest corner of the herein described tract;

THENCE, South 49°58'42" West, along the Southeast right-of-way line of U.S. Highway No. 59 a distance of 110.00 feet
to a 1/2-inch iron rod with cap (TETRA) set for the Southwest corner of the herein described tract;

THENCE, South 39°28'52" East, crossing the said 39.039 Acre Tract, at a distance of 395.66 feet pass a 5/8-inch iron rod
found marking an interior corner of a called 5.00 Acre Tract of land conveyed to Gordon and Linda Franklin, by instrument
recorded in Volume 438, Page 724 of the Official Records of Real Property Wharton County, Texas and continuing for a
total distance of 873.67 feet to the PLACE OF BEGINNING containing within these calls 5.2604 Acres (229,145 Square
Feet) of land.

(BASIS OF BEARINGS: TEXAS STATE PLANE COORDINATE SYSTEM, NAD83, SOUTH CENTRAL ZONE, 4204)

# EXHIBIT B

### STATE OF TEXAS
### COUNTY OF WHARTON
### A. JACKSON TIMBER LEAGUE, A-34
### 2.70± ACRES

TRACT 2

BEING A 2.70± TRACT OF LAND LOCATED IN THE A. JACKSON TIMBER LEAGUE, ABSTRACT NO. 34, WHARTON COUNTY, TEXAS BEING OUT OF A CALLED 39.039 ACRE TRACT OF LAND, CONVEYED TO WHARTON INDUSTRIAL FOUNDATION, INC, BY INSTRUMENT RECORDED IN VOLUME 388, PAGE 247 OF THE OFFICIAL RECORDS OF REAL PROPERTY WHARTON COUNTY, TEXAS, SAID 5.2604 ACRE TRACT BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS;

**COMMENCING** at a 1/2-inch iron rod found marking the Southwest corner of the said 39.039 Acre Tract and the Southeast corner of Lot 1, City of Wharton - Peach Creek Subdivision according to the plat or map thereof recorded in Slide No. 2061 of the Wharton County Plat Records lying in the North right-of-way line of the County Road No. 222 (a 80 foot wide public right-of-way);

**THENCE,** North 10°38'58" East (called N 13°18' E), along the common line between the said 39.039 Acre Tract and the said Lot 1, City of Wharton - Peach Creek Subdivision a distance of 1828.81 feet to a 1/2-inch iron rod found for the **POINT OF BEGINNING** and the Southeast corner of the herein described tract of land;

**THENCE,** North 10°38'58" East, continuing along the common line between the said 39.039 Acre Tract and the said Lot 1, City of Wharton - Peach Creek Subdivision, at a distance of 106.24 feet pass a 1/2-inch iron rod with cap (TETRA) set and continuing for a total distance of 253.0± feet to the center of Peach Creek at the Northeast corner of the herein described tract;

**THENCE,** with the center of Peach Creek, North 80°07'12" West, along the common line between the said 39.039 Acre Tract and a South line of a called 9.542 Acre Tract of land conveyed to Alamo Concrete Products, Ltd., by instrument recorded in Volume 126, Page 526 of the Official Records of Real Property Wharton County, Texas, a distance of 196.96 feet to a point in the center of Peach Creek;

**THENCE,** continuing with the center of Peach Creek, North 79°42'28" West, along the common line between the said 39.039 Acre Tract and the said 9.542 Acre Tract, a distance of 240.55 feet to a point in the center of Peach Creek for the Northwest corner of the herein described tract in the Southeast right-of-way line of U.S. Highway No. 59;

**THENCE,** South 49°58'42" West, along the Southeast right-of-way line of U.S. Highway No. 59, at a distance of 178.44 feet pass a 1/2-inch iron rod found and continuing for a total distance of 258.00± feet to a 1/2-inch iron rod with cap (TETRA) set for the Southwest corner of the herein described tract;

**THENCE,** South 75°19'12" East, crossing the said 39.039 Acre Tract, a distance of 602.32 feet to the **PLACE OF BEGINNING** containing within these calls 2.70± Acres of land.

(BASIS OF BEARINGS: TEXAS STATE PLANE COORDINATE SYSTEM, NAD83, SOUTH CENTRAL ZONE, 4204)

STATE OF TEXAS COUNTY OF WHARTON
I, hereby certify that this document was filed on the date and time stamped and was recorded on 02/09/2016  11:43 AM

*Sandra K Sanders*

COUNTY CLERK  Wharton County, Texas
By _____ Deputy

2016-00000578

MID-COAST TITLE CO., INC.
111 N. Fulton
Wharton, TX 77488

**EXHIBIT "B"**

<u>BILL OF SALE</u>

[ATTACHED]

STATE OF TEXAS          §
COUNTY OF HARRIS          §

## SALES AGREEMENT AND BILL OF SALE

THIS SALES AGREEMENT AND BILL OF SALE (hereafter "Agreement") is between, Eva S. Engelhart, Chapter 7 Trustee (hereafter "SELLER") of Case No. 19-31444 *In re INFRA Technology, LLC* in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (hereafter the "Bankruptcy Case")  and Mabert, LLC and/or its assigns (hereafter "BUYER").

WHEREAS, SELLER and BUYER have agreed to the following:

1.      This agreement is subject to prior bankruptcy court approval;

2.      SELLER agrees to, and does hereby, SELL and BUYER agrees to, and does hereby, BUY the following:

All right, title and interest of SELLER in and to any and all personal property not otherwise affixed permanently to the land at 7391 US-59, Wharton, Texas 77488, including, but not limited to, the modular, transportable GTL (Gas to Liquid) M100 plant for processing natural and associated gas into synthetic crude oil, machinery, equipment and/or tools (collectively the "Assets"), including those things listed on Exhibit B-1 attached hereto.

This bill of sale does not convey the boiler located on the Property, further described as: One (1) 107 HP (3,692 lb/hr steam), 650 psi design pressure, natural gas fired portable boiler.

3.      The price for the Assets is $436,500.00 (US Dollars) payable to Eva S. Engelhart, Trustee by way of bank check, wire transfer or other means expressly agreed to by the parties.  The place for payment is 7700 San Felipe, Suite 550, Houston, Texas 77063, if not made by electronic means.  Payment is due no later than five (5) business days after entry of an Order approving this sale by the bankruptcy court.  After court approval of this sale, and receipt of funds, this executed SALES AGREEMENT and BILL OF SALE shall be effective and provided to BUYER.

4.      The Assets are sold free and clear of liens and claims pursuant to that certain Court Order entered on the _____ day of _____, 2019, in the Bankruptcy Case at Docket Number ____.

5.      BUYER shall be responsible for obtaining possession of the Assets at its sole cost and expense.  BUYER shall not cause damage to the premises where the Assets are located during the removal process.  BUYER assumes the risk of loss between the time that Court approval of this agreement is made and when BUYER takes possession of the Assets.

6.      BUYER expressly agrees that the sale/assignment/transfer of the Assets is on an AS IS WHERE IS basis without any warranties of any kind, express or implied, including, but not limited to, any warranty of merchantability or fitness for any purpose.  BUYER also expressly agrees that SELLER has not made and does not hereby make any representations, warranties, promises, covenants, agreements or guaranties of any kind or character whatsoever, whether statutory, express or implied regarding the same.

7.      This Contract is to be construed in accordance with the laws of the United States Bankruptcy Code, Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure and, failing the applicability of the foregoing, the laws of the State of Texas.  The parties hereby agree that any disputes regarding this agreement shall be subject to the exclusive jurisdiction of the US Bankruptcy Court in which

the Bankruptcy Case is/was pending.  All obligations of the parties created hereunder are performable in Harris County, Texas.

8.      This Contract contains the entire agreement of the parties and may not be changed except in writing.  In the event any covenant, condition or provision herein contained is held to be invalid by final judgment of any Court of competent jurisdiction, the invalidity of such covenant, condition or provision shall not in any way affect any other covenant, condition or provision herein contained, which shall continue in full force and effect.

9.      If this Contract is executed in a number of identical counterparts, each counterpart is an original and all counterparts, collectively, constitute one agreement.

**SELLER**:


By: _____
Eva S. Engelhart, Chapter 7 Trustee, and not individually
Dated: _____

**BUYER**:

Mabert, LLC. (and/or its assigns)


_____
By: Kevin Jones
Its: Manager


Date:_____

Exhibit B-1

(attached)

**Equipment List Mark-100**

**Equipment Installed at Original Designed Skid**

| Equipment | Nature of Operation | Skid |
|---|---|---|
| E-1240 | Lean/ Rich Exchanger | S 2310 |
| | | |
| P-1420A | Lean Booster Pump | 2310 |
| P-1420B | Lean Booster Pump | 2310 |
| P-1430A | Reflux Pump | 2310 |
| P-1430B | Reflux Pump | 2310 |
| V-1330 | Reflux Accumulator | 2310 |
| P-1410A | Amine Circulation Pump | 2310 |
| P-1410B | Amine Circulation Pump | 2310 |
| | | |
| AC-1710 A | Amine Air Cooler | 2311 |
| AC 1710B | Reflux Air Cooler | 2311 |
| | | |
| V-2410 | Steam condensate Knock out | 2312 |
| E-1250 | Amine Reboiler | 2312 |
| D-2410 | De-superheater | 2312 |
| V-1340 | Treated Syngas Separator | 2312 |
| V-1320 | Syngas Scrubber | 2312 |
| P-1450A | FTS 2nd stage cooling water pump | 2312 |
| P-1450B | FTS 2nd stage cooling water pump | 2312 |
| | | |
| AC-1720 A | Treated Syngas Air Cooler | 2313 |
| AC-1720 B | Steam Air Cooler | 2313 |
| E-1260A | Treated Syngas/Syngas Exchanger | 2313 |
| E-1260B | Treated Syngas/Syngas Exchanger | 2313 |
| V-1350B | FTS 2nd stage water accumulator | 2313 |
| E-1270B | FTS 2nd stage condenser | 2313 |
| | | |
| E-1270A | FTS 1st stage condenser | 2314 |
| E-1230 | Syngas Cooler | 2314 |
| E-1280 | Steam Condenser | 2314 |
| E-1220 | Water Heater | 2314 |
| | | |
| R-1610 | FTS 1st Stage Reactor 1 | 2315 |
| R-1620 | FTS 1st Stage Reactor 2 | 2315 |
| R-1630 | FTS 1st Stage Reactor 3 | 2315 |
| R-1640 | FTS 1st Stage Reactor 4 | 2315 |

| | | |
|---|---|---|
| P-1460A | Water Makeup Pump | 2316 |
| P-1460B | Water Makeup Pump | 2316 |
| P-1480 | Cooling Water Makeup Pump | 2316 |
| P-1440A | FTS Stage 1 Water Pump | 2316 |
| P-1440B | FTS Stage 1 Water Pump | 2316 |
| | | |
| R-1650 | FTS 1st Stage Reactor 5 | 2317 |
| R-1660 | FTS 2nd Stage Reactor 1 | 2317 |
| R-1670 | FTS 2nd Stage Reactor 2 | 2317 |
| V-1350 A | FTS Stage 1 water accumulator | 2317 |
| | | |
| V-1360 A | Product Separator Stage 1 | 2318 |
| V-1360 B | Product Separator Stage 2 | 2318 |
| C-1510 | Carbon Dioxide Compressor Skid | 2318 |
| | | |
| E-1211 | Membrane Heater | 2319 |
| D-2110 | De-Aerator | 2319 |
| M-2210A | Membrane | 2319 |
| M-2210B | Membrane | 2319 |
| V-1310 | Inlet Separator | 2319 |
| R-1680 | De-sulfurizer | 2319 |
| H-1810 | Pre-Reformer | 2319 |
| | | |
| SICK Analyzer Cabinet | Furnace Flue and Membrane Permeate Analysis | 2320 |
| GC Analyzer Cabinet | Total Gas Analysis | 2320 |
| | | |
| V-1380 | Product Water Separator | 2321 |
| AC-1730 A | FTS Stage-1 Product Air Cooler | 2321 |
| AC-1730 B | FTS Stage-2 Product Air Cooler | 2321 |
| F-1920 A | Coalescer Filter | 2321 |
| F-1920 B | Coalescer Filter | 2321 |
| F-1910 | Carbon Filter | 2321 |
| | | |
| H-1820<br>  o  Burner 13<br>  o  Radiant Tubes 16<br>  o  Coils 7 [X-2010, 2020, 2030, 2040, 2050, 2060, 2070] | Primary Reformer | Steam Methane Reformer Skid |

| H-1820 o Burner 13 o Radiant Tubes 16 o Coils 7 [X-2010, 2020, 2030, 2040, 2050, 2060, 2070] o Two Furnace | Primary Reformer | Steam Methane Reformer Skid |
|---|---|---|

**Equipment Installed at Open Pads**

| Equipment | Nature of Operation | Skid |
|---|---|---|
| C-1540 | Hydrogen Compressor | In front of Primary Reformer Skid at north east end |
| T-1110 | Amine Absorber/ Contactor | On Pad between S-2310 and S-2312 skid |
| T-1120 | Amine Absorber/ Contactor | On Pad between S-2310 and S-2312 skid |
| P-1494 | Amine makeup pump | On Pad between S-2310 and S-2312 skid |
| V-1390 | Cooling water accumulator tank | On Utility Pad |
| V-1392 | Flare Knock Out Drum | On Pad at East of T-1110 and T-1120 pad |
| P-1492A | Flare Knock Out Drum Pumps | On Pad at East of T-1110 and T-1120 pad |
| P-1492B | Flare Knock Out Drum Pumps | On Pad at East of T-1110 and T-1120 pad |
| FL-2500 | Flare Stack | |
| P-1490 A | Cooling water pump | On Utility Pad |
| P-1490 B | Cooling water pump | On Utility Pad |
| V-1391 | Steam Flash Drum | On Utility Pad |
| P-1491 | Steam Flash Drum Pump | On Utility Pad |
| TK-9003 | Demin Water Tank | On Utility Pad |
| | Air Compressor A | On Utility Pad |
| | Air Compressor B | On Utility Pad |
| | Wet Air Receiver | On Utility Pad |
| | Dry Air Receiver | On Utility Pad |
| | Air Dryer System | On Utility Pad |
| V-1394 | Start-up Naphtha Tank | On Utility Pad |
| P-1495 | Liquid Hydrocarbon Injection Pump | On Utility Pad |

**Equipment Installed Inside & Near Product Dike**

| Equipment | Nature of Operation | Skid |
|---|---|---|
| TK-9001 | Product Tank | Product storage diked Area |
| TK-9002 | Slop Tank | Product storage diked Area |
| P-9001 | Product truck loading pumps | Product storage diked Area |
| P-2002 | Slop oil truck loading pumps | Product storage diked Area |

**Accessories**

| Equipment | Nature of Operation | Skid |
|---|---|---|
| Distributed Control System (DCS) | Plant Automation | Control Room |
| Emergency Shutdown System (ESD) | Safety Automation | Control Room |
| UPS unit | Un-interrupted Power Supply Unit for critical equipment | UPS Room at east end of MCC Room |
| Electrical breaker (480 and 110) + Small UPS | Plant power supply and DCS un- interrupted power supply | MCC Room |

# Invoice

**INFRA Synthetic Fuels, Inc.**

**Date:** June 6, 2019
**Invoice #:** 1
**Customer ID:** Infra Technology LLC

**To:** INFRA Synthetic Fuels Inc.
1980 Post Oak Blvd, Suite 1500
Houston, TX 77056
713-360-4658

**Ship to:** INFRA Technology LLC Bk... Estate

| Qty | Item # | Description | Unit Price | Discount | Line Total |
|-----|--------|-------------|------------|----------|------------|
| 1 | 1 | Plant security @$20 per hour for March 21-April 21 | $ 20.00 | | $ 15,360.00 |
| 1 | 2 | Plant security @$150 per day for April 22- June 15 | $ 150.00 | | $ 8,250.00 |
| 1 | 3 | Electricity charges | | | 4,241.31 |
| | | | | | |
| | | | **Total Discount** | | |
| | | | | **Subtotal** | $ 27,851.31 |
| | | | | **Sales Tax** | |
| | | | | **Total** | $ 27,851.31 |

**Make all checks payable to INFRA Synthetic Fuels, Inc.**
**Thank you for your business!**

# Expense Detail Report

| | | |
|---|---|---|
| **Administrative Expenses** | | |
| | Professional Closing Fee | $437.50 |
| | Postage, Contract, Online Bidding Platform | $468.75 |
| **Total Administrative Expenses** | | **$906.25** |
| | | |
| **Advertising Expenses** | | |
| | Big Boys Email Marketing | $185.33 |
| | LoopNet - Gold Listing | $233.33 |
| | Google Adwords - Digital Marketing | $466.67 |
| | Property Blast - Email Marketing | $265.33 |
| | Website Placement | $600.00 |
| | Postcard & Digital Marketing | $4,000.00 |
| | RedNews Print Ad & Newsletter | $1,526.67 |
| | Vertical Respons Email Marketing | $333.33 |
| | Cmail Email Marketing | $132.00 |
| | Bigger Pockets Web Listing | $240.00 |
| | REI Club Listing | $300.00 |
| | Facebook Digital Marketing | $600.00 |
| | Adwerx Digital Marketing | $265.33 |
| | 800thesign - Signage | $311.72 |
| | Wharton Journal Spectator Print Ads | $573.27 |
| | Property Line Email Marketing | $212.00 |
| | Wall Street Journal Print Ads | $3,030.76 |
| **Total Advertising Expenses** | | **$13,275.75** |
| | | |
| **Travel Expenses** | | |
| | (3) Round Trips for Initial Inspection, Sign & Property Inspection - 128 miles roundtrip @$.58/mile (384 Total Miles) | $222.72 |
| **Total Travel Expenses** | | **$222.72** |
| | | |
| **Other Expenses** | | |
| | Liability Insurance to Trustee Insurance Agency | $4,400.00 |
| | Liability Insurance to Trustee Insurance Agency | $2,200.00 |
| | Rath Plumbing Company | $350.00 |
| **Total Other Expenses** | | **$6,950.00** |
| | | |
| **Total Expenses** | | **$21,354.72** |